# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RAYMOND TIBBETTS,

               Petitioner,        :      Case No. 1:14-cv-602

    - vs -                                District Judge Susan J. Dlott
                                        Magistrate Judge Michael R. Merz

WARDEN, Chillicothe
  Correctional Institution,

                                      :

               Respondent.

## MEMORANDUM OPINION AND TRANSFER ORDER

This capital habeas corpus case is before the Court on Petitioner's Renewed Motion for Leave to File an Amended Petition ("Renewed Motion." ECF No. 57).  The Warden filed a responsive paper which both opposes the Motion to Amend and seeks to have the case transferred as second-of-successive (ECF Nos. 58, 59).  Petitioner's time to file a reply in support of the Renewed Motion expired March 25, 2017, and his time to oppose the Motion to Transfer expired March 31, 2017.  Without seeking or obtaining an extension of time, Petitioner filed a single paper supporting his Renewed Motion and opposing the transfer on April 3, 2017 (ECF No. 60).[1]

---

[1] Assuming counsel's late filing arises from calculating the due date on the basis that the Motion to Transfer was re-filed on March 13, 2017, at the Clerk's request, the Court notes that the time for filing opposing or reply memoranda under S. D. Ohio Civ. R. 7.2 runs from the date of service, not the date of filing.  The Warden's Motion to Transfer was served March 10, 2017.  Amendment to Fed. R. Civ. P. 5 effective December 1, 2016, eliminated the extra three days after electronic service.

1

**Procedural History**

Raymond Tibbetts was convicted and sentenced to death for the November 6, 1997, murders of James Hicks and Susan Crawford. His conviction was affirmed on direct appeal by the Ohio Supreme Court. *State v. Tibbetts*, 92 Ohio St. 3d 146 (2001). He then sought habeas corpus relief in this Court in *Tibbetts v. Bradshaw*, Case No. 1:03-cv-114 in a Petition filed February 18, 2003. On March 29, 2006, District Judge Dlott dismissed the Petition with prejudice. That decision was affirmed on appeal. *Tibbetts v. Bradshaw*, 633 F.3d 436 (6th Cir. 2011), *cert. den., sub. nom. Tibbetts v. Bobby*, 565 U.S. 876 (2011). The instant Petition was filed July 23, 2014 (ECF No. 2).

Upon filing, the Magistrate Judge ordered Petitioner to show cause why this case should not be transferred to the Sixth Circuit as a second-or-successive habeas application (ECF No. 3). Tibbetts responded (ECF No. 6) and the Warden promptly filed a Motion to Dismiss for lack of jurisdiction (ECF No. 7). In opposing dismissal, Tibbetts relied on numerous cases previously decided by the undersigned which concluded that "habeas challenges to new lethal injection protocols adopted since prior habeas corpus cases became final do not constitute second or successive petitions within the meaning of [28 U.S.C.] § 2244(b)." (ECF No. 11, PageID 127, n. 1.) Judge Dlott adopted the Reports reaching that conclusion on March 5, 2015 (ECF No. 20).

At the end of the 2014 Term, the Supreme Court decided *Glossip v. Gross*, 135 S.Ct. 2726 (2015). The Warden moved to dismiss this and other cases on the basis of *Glossip* (ECF No. 22). The Magistrate Judge instead entered an Order to transfer the case to the circuit court as second-or-successive (ECF No. 38), but that Order was withdrawn and the ultimate decision on whether to permit an amendment was postponed until the mandate was issued in Stanley Adams'

habeas corpus action in the Northern District of Ohio.  The instant Motion was timely filed in accordance with the schedule the Court had adopted.

# Analysis

Raymond Tibbetts is a plaintiff in *In re:  Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016.  That case seeks to permanently enjoin Ohio from executing Tibbetts and most other Ohio death row inmates under the current lethal injection protocol, which was adopted October 7, 2016.  That protocol has already been the subject of extensive litigation, resulting in an order preliminarily enjoining its intended use in the executions of Ronald Phillips, Tibbetts, and Gary Otte.  *In re:  Ohio Execution Protocol Litig (Phillips, Tibbetts, & Otte)*, 2017 U.S. Dist. LEXIS 11019 (S.D. Ohio Jan 26, 2017)(Merz, M.J.), presently pending on appeal to the Sixth Circuit.

A civil rights action under 28 U.S.C. § 1983 offers the capital litigant many advantages over a habeas corpus action.  Among other things, it is not subject to the second-or-successive limitation or the limits on discovery in habeas corpus.  Because it is forward looking instead of focused on what happened in the state courts, it is not limited in the introduction of evidence imposed in habeas by § 2254(d) as interpreted in *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Even before the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") vastly increased the procedural restrictions on habeas corpus, the Supreme Court held a district court could not grant release from confinement in a § 1983 action; to do so would frustrate the habeas exhaustion requirements.  *Preiser v. Rodriquez*, 411 U.S. 475 (1973) (Notably, Justice Brennan, the major architect of expansion of habeas in the 1960's, dissented.)  It was in *Nelson v. Campbell*, 541 U.S. 637 (2004), that the Supreme Court first held that a means or method of

execution claim could be brought in a § 1983 case, over the objection of state officials who insisted that such a claim had to be brought in habeas corpus and would, in Nelson's case, have been subject to the second-or-successive requirement imposed by the AEDPA. The Court unanimously concluded that, because Nelson's challenge to the method of execution (a vein cut-down procedure) did not challenge his actual death sentence, it could be brought in a § 1983 action.

*Cooey v. Taft*, Case No. 2:04-cv-1156, a § 1983 action which is the direct predecessor of Case No. 2:11-cv-1016, was filed December 8, 2004, and references an earlier filing in Case No. 2:04-cv-532 on June 10, 2004, less than a month after *Nelson* was decided. As consolidated in 2:11-cv-1016, *Cooey* remains pending. The same organizations of attorneys who provide representation to plaintiffs in 2:11-cv-1016 – the Capital Habeas Units of the Offices of the Federal Public Defender for the Southern and Northern Districts of Ohio and the Ohio Public Defender's Office – also represent most of the capital habeas corpus petitioners in this Court. Thus the litigation context provides maximal opportunities for coordination of strategy. To this Court's eye, those opportunities are never missed; if there are internal disagreements among the capital petitioners' bar, they are not apparent to this Court.

Petitioners' bar has had an apparent strategy for some years to have parallel habeas and § 1983 actions pending simultaneously on behalf of the same inmate and raising substantively parallel claims. Implementation of this strategy has been supported by the series of decisions of the Sixth Circuit in Stanley Adams' habeas corpus case from the Northern District of Ohio, *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011); *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. March 15, 2016); and *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. June 13, 2016), referred to herein as *Adams I*, *Adams II*, and *Adams III* respectively.

4

In *Adams I* the circuit court held, over Ohio's objection, that a challenge to the method of lethal injection could be brought in habeas corpus as well as in a § 1983 action. That is to say, availability of the § 1983 cause of action did not logically imply the absence of a § 2254 cause of action. Attempting to obey *Adams I*, this Court permitted amendments of habeas petitions to add lethal injection claims and indeed treated those claims as newly arising whenever Ohio's lethal injection protocol was amended. Then the Supreme Court appeared to call this Court's practice into question with its decision in *Glossip v. Gross*, 135 S.Ct. 2726 (2015):

> Petitioners contend that the requirement to identify an alternative method of execution contravenes our pre-*Baze* [*v. Rees*, 533 U.S. 35 (2008)] decision in *Hill v. McDonough*, 547 U. S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006), but they misread that decision. The portion of the opinion in *Hill* on which they rely concerned a question of civil procedure, not a substantive Eighth Amendment question. In *Hill*, the issue was whether a challenge to a method of execution must be brought by means of an application for a writ of habeas corpus or a civil action under §1983. *Id.,* at 576, 126 S. Ct. 2096, 165 L. Ed. 2d 44. We held that a method-of-execution claim must be brought under §1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence. *Id*., at 579-580, 126 S. Ct. 2096, 165 L. Ed. 2d 44.

135 S.Ct. at 2738. Changing course, this Court concluded the "must be brought" language precluded what it had been doing under *Adams I*. Then, in *Adams II* as clarified by *Adams III*, the Sixth Circuit decided *Glossip* did not implicitly overrule *Adams I*:

> Adams challenged the constitutionality of lethal injection on direct appeal, asserting that "[d]eath by lethal injection constitutes cruel and unusual punishment and denies due process under the state and federal constitutions." The Ohio Supreme Court rejected this claim, explaining it had "previously rejected similar arguments." *Adams*, 817 N.E.2d at 56 (citing *State v. Carter*, 89 Ohio St. 3d 593, 2000 Ohio 172, 734 N.E.2d 345, 358 (Ohio 2000)). Adams again challenged the constitutionality of execution by lethal injection in his federal habeas corpus petition. The district court denied this claim, noting that "lethal injection is the law of the republic. No federal court has found the lethal injection protocol to

5

be unconstitutional." *Adams*, 484 F. Supp. 2d at 796 (citation omitted).

As an initial matter, we note our recent holding that lethal injection does not violate the Constitution. See *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014) ("Simply put, lethal injection does not violate the Constitution per se . . . ."). In *Scott*, a similar challenge to the implementation of lethal injection was raised, as a panel of this court observed that "Scott's petition alleges that lethal injection 'inflicts torturous, gratuitous and inhumane pain, suffering and anguish upon the person executed.'" *Id.* at 511. Accordingly, the Ohio Supreme Court's denial of Adams's challenge to the constitutionality of lethal injection as a means of execution did not constitute an unreasonable application of Supreme Court precedent.

The Supreme Court's decision in *Glossip* does not alter our precedent. *Glossip* concerned a 42 U.S.C. § 1983 action challenging Oklahoma's execution protocol. . . .

Lastly, notwithstanding the warden's observation that a method-of-execution challenge can only be brought in a § 1983 action under *Hill v. McDonough*, 547 U.S. 573 (2006), Adams can bring this claim in a § 2254 proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Glossip*, 135 S. Ct. at 2738. As we observed in *Adams*, 644 F.3d at 483, however, Adams's case is distinguishable from *Hill* because Adams argues that lethal injection cannot be administered in a constitutional manner, and his claim "could render his death sentence effectively invalid." *Cf. Hill*, 547 U.S. at 580. Our decision in *Adams* is consistent with the Supreme Court's reasoning in *Nelson*, which suggested that, under a statutory regime similar to Ohio's, "a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." 541 U.S. at 644. Thus, to the extent that *Adams* challenges the constitutionality of lethal injection in general and not a particular lethal-injection protocol, his claim is cognizable in habeas. *Adams*, 644 F.3d at 483. However, as the Supreme Court observed in *Glossip*, a challenge to a particular procedure that concedes the possibility of an acceptable alternative procedure is properly brought in a § 1983 action. *Glossip*, 135 S. Ct. at 2738.

*Adams v. Bradshaw*, 826 F.3d 306, 318-21 (6th Cir. 2016), *cert den. sub nom. Adams v. Jenkins*,

137 S. Ct. 814, 196 L. Ed. 2d 602 (2017).  Denial of certiorari triggered issuance of the mandate which then set the deadline for the instant Renewed Motion.

## II. Cognizability of Lethal Injection Claims in Both Habeas Corpus and Civil Rights (42 U.S.C. 1983):  Present Law

As this Magistrate Judge understands it, the current state of the law in the Sixth Circuit after *Adams III* is that habeas corpus will lie to challenge "the constitutionality of lethal injection in general" in that "lethal injection cannot be administered in a constitutional manner, and [that] claim 'could render his death sentence effectively invalid.'" *Adams III*, *quoting Hill v. McDonough*, 547 U.S. at 580.  Although the *Adams* court did not say so explicitly, it is obvious the same claim can also be made in a § 1983 action seeking permanent injunctive relief.  Indeed Stanley Adams has done so in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016.  Of course as a § 1983 plaintiff, a death row inmate must plead a constitutional alternative method of execution. *Glossip*, *supra*.

Tibbetts' proposed amended petition would[2] plead four grounds for relief, all directed to Ohio's current lethal injection protocol, substituting four grounds for relief aimed at lethal injection in Ohio for the ten grounds in the original Petition (ECF No. 2, PageID 3-5).  He emphasizes the differences between relief in habeas and relief in the § 1983 case (ECF No. 60, PageID 985-98).  Ohio's present death penalty law authorizes only execution by lethal injection.  If Ohio can never constitutionally execute Tibbetts by lethal injection, he argues he would be entitled to a writ prohibiting his execution altogether, i.e. declaring his death sentence invalid.[3]

---

[2] Tibbetts' Table of Contents at the outset of his proposed amended petition does not actually state any grounds for relief  (ECF No. 57-1, PageID 850-52), but four grounds are stated in the body of the proposed petition.

[3] Tibbetts makes clear he is attacking in this proceeding only his death sentence and not his conviction (ECF No. 60,

In contrast in § 1983 he can only obtain injunctive relief against particular specifics of the intended execution process and he must, per *Glossip*, plead an available constitutional alternative method of execution.

These differences appear to track the **substantive** distinction the Sixth Circuit recognized in *Adams III* between a § 1983 lethal injection claim and one made in habeas corpus. As support for his interpretation of *Adams III*, Tibbetts relies on *In re: Lawrence Landrum*, Case No. 16-3151 (6th Cir. Feb. 13, 2017)(unreported; copy at ECF No. 60-1, PageID 1001-04).[4] The Court is unsure what weight should be given to a circuit court opinion that is not only unpublished but unreported, but agrees that *Landrum* supports Tibbetts' position on the meaning of *Adams III*.

However, pleadings that satisfy the substantive distinction between habeas and § 1983 do not, by that fact alone, satisfy the **procedural** distinctions between § 1983 and habeas. Indeed, in *Landrum* the Sixth Circuit found the claims cognizable in habeas, but second or successive.

### III. Tibbetts's Petition and his Renewed Motion[5] Are Second-or-Successive Habeas Corpus Applications and Require Circuit Court Permission to Proceed

There is no dispute that this is Tibbett's second-in-time habeas corpus case. Such cases may not proceed in the district court without permission of the relevant circuit court if they are also second-or-successive. 28 U.S.C. § 2244(b). Indeed, district courts lack jurisdiction to deal with such cases without circuit court permission. *Franklin v. Jenkins*, 839 F.3d 465(6th Cir.

---

PageID 991, n. 2)

[4] Because both sides in pending capital litigation have repeatedly cited *Landrum*, this Court urges the parties to jointly move the Sixth Circuit to publish the referenced opinion.

[5] In *Moreland v. Robinson*, 813 F.3d 315 (6th Cir. 2016), the Petitioner simultaneously filed a motion for relief from judgment and a motion for leave to amend once the judgment was reopened. The Sixth Circuit held that both "motions are second or successive habeas petitions that the district court lacked jurisdiction to consider. Rather than denying Moreland's motions, the district court should have transferred them to this court to review as requests for permission to be filed." 813 F.3d at 319.

2016); *Burton v. Stewart*, 549 U.S. 147 (2007).

This state of the law strongly suggests much caution in deciding the second-or-successive question. If a district court finds a second-in-time petition is not second-or-successive, as capital habeas petitioners routinely argue, it may waste several years of judicial effort litigating a case over which it has no jurisdiction. The second-or-successive question, being jurisdictional, will remain open on appeal and a reversal for lack of jurisdiction will mean all that the district court has done is void for lack of jurisdiction. If, on the other hand, the district court finds the application is second-or-successive and transfers the case, the circuit court will either agree (and give permission to proceed or not) or disagree, in which case it will remand and deny the request for permission to proceed as unnecessary. *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015), *citing Howard v. United States*, 533 F.3d 472 (6th Cir. 2008); *In re: Cedric E. Powell*, Case No. 16-3356, 2017 U.S. App. LEXIS 1032 (6th Cir. Jan. 6, 2017).

Whatever caution is exercised, however, the district court must decide the second-or-successive question in the first instance, as the Sixth Circuit previously held in *In re: Kenneth Smith*, *supra*.

In support of his claim that the Renewed Motion is not second-or-successive, Tibbetts asserts that he "could not have raised these particular lethal-injection invalidity claims until the new factual predicates arose by virtue of Ohio's adoption of a series of new execution protocols, including the current October 7, 2016[,] protocol." (ECF No. 60, PageID 983.) The new factual predicates adverted to are:

1. Evidence discovered during hearings in the summer of 2011 and early winter of 2012; *Id.*

2. Ohio's intention to use compounded drugs – discovered when "the State began to cast about for alternative execution drug sources in 2013." *Id.*

9

3. Use of midazolam and hydromorphone – October 10, 2013. *Id.* at PageID 984.

4. Evidence of how that two-drug combination would work when it was used by Ohio (Dennis McGuire, January 2014) and Arizona in 2014. *Id.*

5. Evidence that Ohio would use its current three-drug protocol -- October 2016. *Id.*

Summarizing, Tibbetts argues:

> Each of these factual predicates are [sic] the type of evidence to which the Sixth Circuit in *In re Landrum* referred. And each could not have been discovered earlier through the exercise of due diligence because they [sic] did not exist. 28 U.S.C. § 2244(d)(1)(D). Conversely, none of the aforementioned evidence was available in 2001 when Ohio adopted lethal injection as the exclusive manner of execution, nor in 2003 when Tibbetts filed his first petition.

(ECF No. 60, PageID 984-85.)

Although he does not say so explicitly, Tibbetts is implicitly arguing for a return to this Court's practice under its original interpretation of *Adams I*: every change in Ohio's lethal injection protocol gives rise to new claims and therefore supports amendment of the habeas petition to plead challenges to those changes. The logic of that position extends even further: new evidence about the implementation of Ohio's protocol or even of other protocols by other States gives rise to new claims.

Adopting this approach would completely collapse the procedural distinctions between habeas and § 1983 lethal injection litigation. It would undercut the AEDPA statute of limitations, because the statute would begin to run again every time there was a "newly arising predicate." It would use the same logic to eliminate the second-or-successive permission requirement on the apparent theory that any challenge to a newly arising predicate is a first-in-time petition as to that predicate, without any change at all in the underlying state court

10

judgment.

As this Court recently held in *Smith v. Pineda*, 2017 U.S. Dist. LEXIS 50346 (S.D. Ohio Apr. 3, 2017), this argument "[f]undamentally . . . fails to distinguish between newly arising claims and newly discovered evidence to support those claims." *Id.* at *15. For example, Tibbetts' proposed Third Ground for Relief, like Smith's, claims any execution by Ohio will violate the Equal Protection Clause. But Tibbetts and Smith and their co-plaintiffs in *In re: Ohio Execution Protocol Litig.*, *supra*, have been making that argument for years in that case. How, then, is the claim newly arising?

**Abuse of the Writ**

Before enactment of the AEDPA, a prisoner could bring repeated habeas corpus actions attacking the same state court judgment. Rule 9(b) of the Rules Governing Section 2254 Cases formerly provided:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

The Sixth Circuit has explained the relationship between abuse of the writ doctrine and the second-or-successive prerequisite in *In re Bowen*, 436 F.3d 699 (2006)(Cole, J.):

> The Supreme Court has made clear that not every numerically second petition is "second or successive" for purposes of AEDPA. *Slack v. McDaniel*, 529 U.S. 473, 487, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (a petition filed after a mixed petition has been dismissed before the district court has adjudicated any claim is not a second or successive petition); *Martinez-Villareal v. Stewart*, 523 U.S. 637, 118 S. Ct. 1618, 140 L. Ed. 2d 849 (1998) (a numerically second petition alleging a claim that was contained in a first

11

> petition, but dismissed as unripe, is not second or successive); see also *Carlson v. Pitcher*, 137 F.3d 416, 419 (6th Cir. 1998) (same). Although § 2244(b) specifies the treatment of second or successive petitions, courts defining "second or successive" generally apply abuse of the writ decisions, including those decisions that predated AEDPA. *Martinez-Villereal*, 529 U.S. at 643-45 (considering "abuse of the writ" cases in determining whether petitioner's *Ford* claim is second or successive); see also *Singleton v. Norris,* 319 F.3d 1018, 1023 (8th Cir. 2003); *Esposito v. United States,* 135 F.3d 111, 113 (2d Cir. 1997) (per curiam); *Pratt v. United States,* 129 F.3d 54, 60 (1st Cir. 1997), cert. denied, 523 U.S. 1123, 140 L. Ed. 2d 945, 118 S. Ct. 1807 (1998); *Reeves v. Little*, 120 F.3d 1136, 1138 (10th Cir. 1997) (per curiam). In *Sanders v. United States,* 373 U.S. 1, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1948), the Supreme Court explained abuse of the writ:
>
>> [I]f a prisoner deliberately withholds one or two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. … Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.
>
> *Id*. at 18, 83 S.Ct. 1068. Under the abuse of the writ doctrine, a numerically second petition is "second" when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect. *McCleskey v. Zant*, 499 U.S. 467, 489, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

*Id.* at 704.

Tibbetts' lethal injection invalidity claims all became available to him at the latest when Ohio adopted lethal injection as its sole method of execution in 2001 before his original Petition was filed in February 2013. As his Fourteenth Ground for Relief in that Petition, he pleaded "Petitioner's constitutional rights were violated by the administration of the death penalty by lethal injection in the state of Ohio." (Case No. 1:03-cv-114, ECF No. 44, PageID 427-28.) The

undersigned recommended finding the claim should be dismissed as without merit and Tibbetts did not object to that recommendation. He has not attempted to show how the claims he filed in the original Petition in this case in July 2014 or the claims he seeks to substitute now are legally different within the meaning of *Adams III*. To the extent the Sixth Circuit in *Adams I*, *Adams II*, and *Adams III* has elided the substantive differences between habeas and civil rights attacks on lethal injection protocols, they have not eliminated the procedural differences.

**Cognizability**

Tibbetts spends a good deal of his most recent memorandum arguing the cognizability of his proposed new claims. As noted above, they appear to meet the substantive criteria the Sixth Circuit set for habeas corpus lethal injection claims in *Adams III*. However, having determined that the Petition and Renewed Motion are second-or-successive habeas applications, this Court lacks jurisdiction to decide that question. *Moreland v. Robinson*, *supra.*

**Conclusion**

This case is a second-or-successive habeas corpus attack on the same judgment/sentence of death collaterally attacked in Tibbetts' prior habeas case. It thus may not proceed without permission of the circuit court under 28 U.S.C. § 2244(b).

The case is therefore ordered TRANSFERRED to the United States Court of Appeals for the Sixth Circuit for determination of whether or not it may proceed. The effective date of this

Order is POSTPONED until District Judge Dlott decides any appeal from this Order.

April 5, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge