# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

RAYMOND TIBBETTS,

          Petitioner,  :  Case No. 1:14-cv-602

- vs -                       District Judge Susan J. Dlott
                             Magistrate Judge Michael R. Merz

WARDEN, Chillicothe
  Correctional Institution,
                                     :

          Respondent.

## DECISION AND ORDER

This capital habeas corpus case is before the Court on Petitioner's Objections to and Appeal from the Magistrate Judge's Transfer Order (Transfer Order, ECF No. 61), (Objections, ECF No. 62). The Warden has timely responded to those Objections (ECF No. 63).

The order appealed from determined that both the original Petition in this case and Petitioner's recent Motion for Leave to Amend (ECF No. 57) constituted second-or-successive habeas corpus applications which required permission of the circuit court under 28 U.S.C. § 2244(b) before they could proceed in this Court.

**Magistrate Judge Authority**

Petitioner first objects that a United States Magistrate Judge lacks authority to transfer a case to the circuit court for a decision on whether a petitioner may proceed, incorporating by reference a prior argument to that effect made on an earlier occasion in this case (Objections,

1

ECF No. 62, PageID 1029, referencing ECF No. 40, PageID 700-02). The Court did not pass on those prior Objections because the Order in question was withdrawn (ECF No. 46). Considering them now, the Court concludes they are not well taken.

28 U.S.C. § 636(b)(1)(A), a part of the Magistrates' Act, precludes a magistrate judge from determining certain pretrial matters. Those matters are classified as "dispositive" because they are "dispositive of a claim or defense of a party." *See, Vogel v. U.S. Office Products Company*, 258 F.3d 509, 514 (6th Cir. 2001), *citing* Fed.R.Civ.P. 72. In determining whether a particular motion is dispositive, the Sixth Circuit undertakes a functional analysis of the motion's potential effect on litigation. *Vogel*, 976 F.2d at 514-15. The list of dispositive motions contained in § 636(b)(1)(A) is nonexhaustive, and unlisted motions that are functionally equivalent to those listed in § 636(b)(1)(A) are also dispositive. *Id.* (holding motions to remand are dispositive) and *citing, Callier v. Gray*, 167 F.3d 977, 981 (6th Cir. 1999)(holding that a motion for default judgment is dispositive because it is "substantially similar to several of the listed motions"); *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169-70 (6th Cir. 1993)(holding that a motion to certify a district court order for interlocutory appeal is dispositive); *Bennett v. General Caster Service of N. Gordon Co., Inc.*, 976 F.2d 995 (6th Cir. 1992)(*per curiam*) (holding that a motion for Rule 11 sanctions is dispositive); *United States Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir. 1992)(holding that because a motion to realign parties would either destroy or preserve diversity jurisdiction, motions to realign are dispositive); *Woods v. Dahlberg*, 894 F.2d 187 (6th Cir.)(holding that an order denying a motion to proceed in forma pauperis is dispositive because it is the functional equivalent of an involuntary dismissal). *See also National City Bank v. Aronson*, 474 F.Supp. 2d 925 (S.D. Ohio 2007)(Marbley, J.)(remand motion is dispositive).

As Petitioner admits, the Sixth Circuit has never decided that a motion to transfer a habeas corpus application as second-or-successive is functionally equivalent to any of the motions listed in the statute or added by case law. As a matter of practice, the Sixth Circuit has routinely accepted transfers signed by Magistrate Judges from this District without questioning their authority to enter the order. *See In re: Kenneth Smith*, 690 F.3d 809 (6th Cir. 2012); *In re Sheppard*, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012).

Petitioner argues that a motion to transfer is functionally equivalent to a motion to dismiss for lack of subject matter jurisdiction, on which a Magistrate Judge would plainly be limited to making a recommendation under 28 U.S.C. § 636(b)(2). The Court disagrees. An order dismissing a case for lack of jurisdiction would be a final appealable order. An order transferring a case to the circuit court does not have that effect. Instead of deciding the district court does not have subject matter jurisdiction, it decides that the exercise of that jurisdiction cannot occur without circuit court permission.

A parallel argument about Magistrate Judge authority to decide motions to amend under Fed. R. Civ. P. 15 has been made by other capital habeas corpus petitioners and rejected by this Court. *McKnight v. Bobby*, 2017 U.S. Dist. LEXIS 63861 (S.D. Ohio Apr. 27, 2017)(Dlott, D.J.)

The Court concludes a United States Magistrate Judge has authority to enter an order transferring a second-or-successive habeas corpus application to the circuit court of appeals for consideration under 28 U.S.C. § 2244(b).

Assuming arguendo that a transfer order is not dispositive, Petitioner argues he is nonetheless entitled to de novo review of such an order. Because in this case the Transfer Order is based completely on conclusions of law, the Court agrees that de novo review is required under Fed. R. Civ. P. 72(a) and has reviewed the Objections against that standard.

### The Petition and Motion to Amend Are Second-or-Successive Habeas Corpus Applications

Raymond Tibbetts was convicted and sentenced to death for the November 6, 1997, murders of James Hicks and Susan Crawford. His convictions were affirmed on direct appeal by the Ohio Supreme Court. *State v. Tibbetts*, 92 Ohio St. 3d 146 (2001). He then sought habeas corpus relief in this Court in *Tibbetts v. Bradshaw*, Case No. 1:03-cv-114 in a Petition filed February 18, 2003. On March 29, 2006, this Court dismissed the Petition with prejudice, *aff'd*, *Tibbetts v. Bradshaw*, 633 F.3d 436 (6th Cir. 2011), *cert. den., sub. nom. Tibbetts v. Bobby*, 565 U.S. 876 (2011). The instant Petition, second-in-time, was filed July 23, 2014 (ECF No. 2).

Tibbetts is also a plaintiff in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016, a § 1983 case which seeks to permanently enjoin Ohio from executing him and most other Ohio death row inmates under the current lethal injection protocol, which was adopted October 7, 2016. That case, under one caption or another, has been pending for more than twelve years and has challenged new Ohio execution protocols as they have been adopted. Tibbetts' execution under the October 7, 2016, protocol has been preliminarily enjoined. *In re: Ohio Execution Protocol Litig. (Phillips, Tibbetts, & Otte)*, 2017 U.S. Dist. LEXIS 11019 (S.D. Ohio Jan 26, 2017)(Merz, M.J.), *aff'd, Fears v. Morgan (In re: Ohio Execution Protocol)*, 853 F.3d 822 (6th Cir. 2017), *vacated upon grant of reh'g en banc*, ___ F.3d ___, 2017 U.S. App. LEXIS 7272 (6th Cir. Apr. 25, 2017).

As the Magistrate Judge noted in the Transfer Order, "[p]etitioners' bar has had an apparent strategy for some years to have parallel habeas and § 1983 actions pending simultaneously on behalf of the same inmate and raising substantively parallel claims." (ECF

No. 61, PageID 1017.) The Objections do not disclaim that strategy, which has been enabled by the Sixth Circuit's decisions in the Stanley Adams habeas corpus case from the Northern District of Ohio.[1] The Transfer Order traces the impact of the *Adams v. Bradshaw* decisions over time and the intervening Supreme Court decision in *Glossip v. Gross*, 135 S.Ct.2726 (2015). The Sixth Circuit's ultimate conclusion that a habeas petition posing a general enough challenge to lethal injection (i.e., it will always be unconstitutional for Ohio to execute this particular petitioner by lethal injection) but not too general (i.e. lethal injection is unconstitutional in all circumstances) is cognizable. Because Tibbetts' four proposed lethal injection invalidity claims in his Proposed Amended Petition are general enough, the Magistrate Judge concluded they are cognizable in habeas (ECF No. 61, PageID 1021). He did not conclude they would be futile, as the Objections assert (ECF No. 62, PageID 1031). The Court agrees these claims are cognizable in habeas and the motion to amend to add them is not futile on that basis.

However, the cognizability of those claims does not imply that the Petition and the Renewed Motion to Amend are not second-or-successive habeas applications. Tibbetts is of course correct that not every second-in-time habeas application is to be treated as second-or-successive (Objections, ECF No. 62, PageID 1031). But the District Court also cannot avoid deciding the second-or-successive question in the first instance. *In re: Kenneth Smith*, 690 F.3d 809 (6th Cir. 2012).

In the Transfer Order, the Magistrate Judge discusses the dilemma second-or-successive questions pose for a district court (ECF No. 61, PageID 1022). Because district courts have no jurisdiction to consider the merits of a second-or-successive habeas application, they risk serious

---

[1] There are three published opinions of the Sixth Circuit in Stanley Adams' habeas corpus case: *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011); *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. March 15, 2016); and *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. June 13, 2016), referred to herein as *Adams I*, *Adams II*, and *Adams III* respectively.

5

waste of time and effort if they accept a petition and the court of appeals later concludes they had no jurisdiction to consider it. On the other hand, the Sixth Circuit has been prompt in deciding second-or-successive questions and simply remands a case if they find no § 2244(b) permission is needed. *In re: Michael Stansell*, 828 F.3d 412 (6th Cir. 2016); *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015), *citing Howard v. United States*, 533 F.3d 472 (6th Cir. 2008); *In re: Cedric E. Powell*, Case No. 16-3356, 2017 U.S. App. LEXIS 1032 (6th Cir. Jan. 6, 2017).

Tibbetts notes that federal courts "apply the 'abuse-of-the-writ' doctrine to determine whether a petitioner's numerically second petition is a second or successive petition." (Objections, ECF No. 62, PageID 1031, *quoting In re Bowen*, 436 F.3d 699, 700 (6th Cir. 2006).) That doctrine was adopted in the pre-AEDPA era when there was no statutory limit on the number of habeas petitions a prisoner could file and a way needed to be found to bring finality to habeas cases. In *Bowen*, the court cites the Supreme Court's explanation of the rationale from *Sanders v. United States*, 373 U.S. 1 (1948):

> If a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. ... Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

*Id.* at 18.

In *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), the Court found that a *Ford v. Wainwright* incompetent-to-be-executed habeas claim which was included in an initial habeas petition but dismissed as premature (because execution was not imminent), was not second-or-successive when presented in a second-in-time petition after an execution date was set. Chief

Justice Rehnquist analogized the Martinez-Villareal's situation to that of a habeas petitioner who presented an unexhausted claim in an initial petition and then sought to return to federal court after exhaustion. *Id.* at 644. *Martinez-Villareal* held:

> "[T]he new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what used to be called in habeas corpus practice 'abuse of the writ.'" . . . It is certain that respondent's *Ford* claim would not have been barred under any form of res judicata. Respondent brought his claim in a timely fashion, and it has not been ripe for resolution until now.

523 U.S. at 645, *quoting Felker v. Turpin*, 518 U.S. 651, 664 (1996). The Court does not hold that 28 U.S.C. § 2244(b) codifies the abuse-of-the-writ doctrine. Instead, it seems to authorize second-in-time habeas petitions as not second-or-successive if they raise claims presented in an initial petition that were not adjudicated on the merits.[2] Then in *Panetti v. Quarterman*, 551 U.S. 930 (2007), the Court extended *Martinez-Villareal* to cases where an unripe *Ford* claim was not included in an initial petition because to have done so would have been "an empty formality." 551 U.S. at 946.

Using what might be called the abuse-of-the-writ exception thus allows federal courts to entertain a second-in-time petition without circuit court permission when the prisoner could not have properly raised his claims in his first petition. Thus in *Bowen* itself, the petitioner had ineffective assistance of trial and appellate counsel claims which were unexhausted at the time he filed his first petition in 1999. At that time, "mixed" habeas petitions were subject to dismissal in their entirety and the AEDPA statute of limitations could prevent their being presented after they were exhausted. *Rose v. Lundy*, 455 U.S. 509 (1982). To cure this problem, the Supreme Court handed down *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005), which authorized district courts to allow mixed petitions to be stayed until exhaustion had occurred, but this expedient was

---

[2] Justice Scalia dissented on the grounds this gloss on the AEDPA ignored its plain language. *Id.* at 647.

not available to *Bowen* in 2004 when his ineffective assistance claims became exhausted. In *In re: Curtis Jones*, 652 F.3d 603 (2010), the court dismissed as unnecessary a motion to allow a second habeas petition to challenge raising an ex post facto claim about changes in the state parole system that occurred after the first petition was decided.

Tibbetts claims his proposed new lethal injection invalidity grounds for relief fit within the abuse of the writ exception because they could not have been raised in his first Petition. Each is said to involve "new factual predicates [that] arose by virtue of Ohio's adoption of a series of new execution protocols . . . ." (Response, ECF No. 60, PageID 983.) Those new factual predicates are:

> 1. Evidence discovered during hearings in the summer of 2011 and early winter of 2012; *Id.*
>
> 2. Ohio's intention to use compounded drugs – discovered when "the State began to cast about for alternative execution drug sources in 2013." *Id.*
>
> 3. Use of midazolam and hydromorphone – October 10, 2013. *Id.* at PageID 984.
>
> 4. Evidence of how that two-drug combination would work when it was used by Ohio (Dennis McGuire, January 2014) and Arizona in 2014. *Id.*
>
> 5. Evidence that Ohio would use its current three-drug protocol -- October 2016. *Id.*

The Transfer Order found Tibbetts was

> implicitly arguing for a return to this Court's practice under its original interpretation of *Adams I*: every change in Ohio's lethal injection protocol gives rise to new claims and therefore supports amendment of the habeas petition to plead challenges to those changes. The logic of that position extends even further: new evidence about the implementation of Ohio's protocol or even of other protocols by other States gives rise to new claims.

(ECF No. 61, PageID 1023.) Tibbetts does not object to this analysis. Indeed, he cites the prior

8

decisions of judges of this Court allowing amendments on that basis (ECF No. 62, PageID 1033).³ The Objections equivocate, however, on when Tibbetts' proposed claims became ripe. At one point he asserts "many of the factual predicates for Tibbetts' amended lethal-injection claims did not arise, and his claims were not ripe, until the watershed change in Ohio's lethal-injection protocol on October 7, 2016, replacing the prior one-drug protocol with a three-drug protocol utilizing [sic] midazolam as the first drug." (ECF No. 62, PageID 1034). That would seem to be an assertion that the proposed claims became ripe on or about October 7, 2016 At another place, however, Tibbetts argues his new claims arose "only after sufficient evidence has amassed to support his claim that Ohio can *never* constitutionally execute him." *Id.* But when was that? Was it only after adoption of the three-drug protocol in October 2016 or did it occur before that when Ohio adopted a protocol using midazolam and hydromorphone on October 10, 2013? If the latter, why didn't the statute of limitations expire on these new claims on October 11, 2014?

> The Transfer Order rejected this approach as inconsistent with the AEDPA:
>
>> Adopting this approach would completely collapse the procedural distinctions between habeas and § 1983 lethal injection litigation. It would undercut the AEDPA statute of limitations, because the statute would begin to run again every time there was a "newly arising predicate." It would use the same logic to eliminate the second-or-successive permission requirement on the apparent theory that any challenge to a newly arising predicate is a first-in-time petition as to that predicate, without any change at all in the underlying state court judgment.

(ECF No. 61, PageID 1023-24.) Tibbetts does not object to this analysis, but instead asserts it is completely consistent with what the Sixth Circuit decided in *Adams III*. (Objections, ECF No. 62, PageID 1036-37.) But *Adams III* is a decision about the **cognizability** of method-of-

---

³ Although four different judges are cited, all four of the referenced capital cases are referred to Magistrate Judge Merz.

9

execution claims in habeas in light of *Glossip, supra.* Respecting evidence to be presented on such claims, the case recognizes that discovery in the § 1983 case may produce evidence to be admitted in this habeas case.[4] However, there is no discussion of the statute of limitations issues or the second-or-successive question.

Tibbetts mentions the § 1983 case, but only to point out that this Court and the Sixth Circuit "have embraced a rule that the adoption of a new protocol that significantly changes the procedures or means or manner of execution restarts the statute of limitations for the filing of a § 1983 action." (Objections, ECF No. 62, PageID 1033, *citing Cooey (Beuke) v. Strickland,* 604 F.3d 939, 942 (6th Cir. 2010). That, of course, is completely appropriate. When the State adopts a new procedure that is arguably unconstitutional, a person who will be subjected to that constitutional deprivation seeks injunctive relief to prevent the deprivation; the claim does not arise until the procedure is adopted. Unlike prospective injunctive relief in a civil rights action, however, habeas corpus looks back to a judgment already imposed. Petitioner's position – presumably applicable to all capital petitioners represented by the Federal Public Defender – completely conflates habeas and § 1983 procedure. If that is what the Sixth Circuit intended by its decision in *Adams III*, it will presumably tell us in response to the Transfer Order.

The Transfer order is not contrary to law. Petitioner's Objections to it are therefore OVERRULED and the Clerk shall carry the Transfer Order into execution.

May 26, 2017.

*Susan J. Dlott*
Susan J. Dlott
United States District Judge

---

[4] Without, however, discussing how this evidence can be admitted in light of *Cullen v. Pinholster,* 563 U.S. 170 (2011).